SQUIRE, SANDERS & DEMPSEY (US) LLP
Robert A. Wolf (robert.wolf@ssd.com)
Andrea K. Fisher (andrea.fisher@ssd.com)
Nicholas Brannick (nicholas.brannick@sssd.com) (admitted in Ohio)
30 Rockefeller Plaza, 23rd Floor
New York, New York 10112
(212)872-9800

*Special Litigation Counsel to Robert L. Geltzer,
as Chapter 7 Trustee of Kenneth Ira Starr*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

– – – – – – – – – – – – – – – – – – – – – – – – – – – – x
**In re**                                                    : **Chapter 7**
                                                             :
   **KENNETH IRA STARR,**                                    : **Case No. 11-10219 (ALG)**
                                                             :
                         **Debtor.**                         :
                                                             :
– – – – – – – – – – – – – – – – – – – – – – – – – – – – x
**In re**                                                    : **Chapter 7**
                                                             :
   **STARR & COMPANY, LLC**                                  : **Case No. 11-10637 (ALG)**
                                                             :
                         **Debtor.**                         :
                                                             :
– – – – – – – – – – – – – – – – – – – – – – – – – – – – x
**In re**                                                    : **Chapter 7**
                                                             :
   **STARR INVESTMENT ADVISORS, LLC**                        : **Case No. 11-10639 (ALG)**
                                                             :
                         **Debtor.**                         :
                                                             :
– – – – – – – – – – – – – – – – – – – – – – – – – – – – x

**MOTION OF ROBERT L. GELTZER, AS CHAPTER 7 TRUSTEE OF
KENNETH IRA STARR, FOR JOINT ADMINISTRATION AND
SUBSTANTIVE CONSOLIDATION OF ESTATES OF KENNETH IRA
STARR, STARR & COMPANY, LLC AND STARR INVESTMENT ADVISORS, LLC**[1]

**TO THE HONORABLE ALLAN L. GROPPER
UNITED STATES BANKRUPTCY JUDGE:**

---

[1] The instant motion has been filed via ECF on the docket for each of the above-captioned debtors.

143188.3/103032.00059

Robert L. Geltzer, Chapter 7 Trustee (the "Trustee") of the debtor Kenneth Ira Starr (the "Debtor" or "Starr"), by and through his undersigned Special Litigation Counsel, respectfully submits this *Motion of Robert L. Geltzer, as Chapter 7 Trustee of Kenneth Ira Starr, for Joint Administration and Substantive Consolidation of Estates of Kenneth Ira Starr, Starr & Company, LLC and Starr Investment Advisors, LLC* (this "Motion") and in support hereof represents as follows:

### Jurisdiction and Venue

1.      This Court has subject matter jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334(a). Venue is proper pursuant to 28 U.S.C. § 1408. This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(1) and (b)(2)(A) and (O). This Motion is brought pursuant to section 105(a) of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code") and Federal Rule of Bankruptcy Procedure 1015(b).

### Background

2.      Starr managed the financial and related personal affairs of a number of wealthy clients, some of whom are well-known celebrities, and also served as an investment advisor.

3.      On or about May 26, 2010, the United States brought a criminal proceeding (the "Criminal Proceeding") against Starr in the United States District Court for the Southern District of New York (the "District Court"), Case Number 10-CR-00520-SAS-1, alleging, among other things, that Starr, through his limited liability companies, Starr Investment Advisors, LLC ("SIA") and Starr & Company, LLC ("S&C," and together with SIA the "Corporate Debtors," and together with Starr and SIA, each a "Debtor" and collectively, the "Debtors"), committed various forms of fraud and misappropriation of client assets, including unauthorized transfers of client funds to Starr's own accounts and that Starr defrauded his clients by inducing them to

invest in risky, illiquid businesses and ventures in which he, his wife or other associates held material interests.  *See* Complaint, Criminal Proceeding, May 26, 2010 [Doc. 1] at ¶ 8 (hereinafter the "Criminal Complaint"); Indictment, Criminal Proceedings, June 10, 2010 [Doc. 11] at ¶ 3 (hereinafter the "Indictment").  True and accurate copies of the Criminal Complaint and Indictment are attached hereto as <u>Exhibit 1</u>.

4.      Also on or about May 26, 2010, the United States Securities and Exchange Commission (the "SEC") commenced a civil enforcement proceeding in the District Court against the Debtors (the "Receivership Proceeding"), Case Number 10-CIV-4270 (SHS), in which the SEC alleged, among other things, that the Debtors had perpetrated a fraudulent scheme, abusing the signatory power they had with respect to their clients' bank and investment accounts, and misappropriating client funds for their own purposes.

5.      On or about June 10, 2010, the District Court appointed Aurora Cassirer, Esq., as temporary receiver (the "Receiver") for the Corporate Debtors as well as for Colcave, LLC, upon information and belief, a non-debtor entity created to hold an apartment in which Starr and his wife Diana Passage then lived.  On or about July 8, 2010, the Receiver was appointed by the District Court as the permanent receiver in the Receivership Proceeding.

6.      An involuntary bankruptcy proceeding under chapter 7 of the Bankruptcy Code was commenced before this Court against Starr by the Estate of Joan Stanton and JAS Ventures, L.P. on January 21, 2011.

7.      On February 17, 2011 (the "Corporate Debtors' Petition Date") voluntary petitions under chapter 7 of the Bankruptcy Code were commenced regarding the Corporate Debtors by the Receiver.  Albert Togut was appointed as the interim chapter 7 trustee in the bankruptcy proceedings of SIA and S&C (the "Corporate Debtors' Trustee").

8.     An order for relief was entered in the bankruptcy proceeding of Starr on July 12, 2011. On or about the same date, Robert L. Geltzer was appointed as interim chapter 7 trustee of the Debtor Starr.

9.     Upon information and belief, previously, on or about September 10, 2010, Starr pled guilty in the Criminal Proceeding to, among other things, running a Ponzi scheme, and he was convicted to seven and a half (7-1/2) years in prison. Upon information and belief, Starr presently is serving his sentence at the Federal Prison located in Otisville, New York.

10.    Upon initial investigation by the Trustee, it appears that there maybe assets within the bankruptcy estate of Starr that ultimately may be distributable to creditors of Starr's bankruptcy estate, including Starr's apparent interests in certain partnership ventures whose formation and acquisition of certain assets appear to be unrelated to, and to pre-date significantly, the fraudulent business activities of the Debtors.

11.    In addition, it appears that there is personal property as to which ownership among the Debtors is not readily determinable, such as sports memorabilia, art, photographs and other decorative items and personal property. *See SEC v. Starr*, 10 CIV.4270, *First Report of Temporary Receiver* (D. S.D.N.Y. Jul. 8, 2010) [Doc. 18] (hereinafter "*Interim Receiver Report,*" a copy of which is annexed hereto as Exhibit 2) at ¶ 14 ("[T]here are assorted paintings, photographs and other art or decorative items in the Starr offices…. The disposition of such objects may … be complicated by the fact that ownership of such objects may be in dispute as between the [Corporate Debtors] and Mr. Starr….").

12.    Other than potential avoidance claims under chapter 5 of the Bankruptcy Code, the estates of the Corporate Debtors do not appear to possess any assets that are not potentially property of Starr's bankruptcy estate. *Interim Receiver Report* at ¶ 3 ("I have preliminarily

concluded that there are few if any assets of significant value held in the name of, or on the books of the [Corporate Debtors].").

13.     Furthermore, upon information and belief, it is possible that because Starr orchestrated a Ponzi scheme involving clients of the Corporate Debtors, some of those clients may be subject to litigation due to the receipt of "phantom" profits, while claims may also exist against other parties for malpractice or breach of fiduciary duty. *See Interim Receiver Report* at ¶ 20-21 (discussing potential claims held by Corporate Debtors).

14.     However, as indicated by the Receiver in her *Motion for an Order Terminating Receiverships of Starr Investment Advisors, LLC and Starr & Company, LLC and Granting Related Relief* filed in the Receivership Proceeding on March 4, 2011 (the "Receiver Termination Motion," a copy of which is annexed hereto as <u>Exhibit 3</u>), the "Receivership Estates do not have sufficient cash resources, or prospects of cash recoveries…to permit the Receiver and [Receiver's counsel] to continue the administration of the Receivership Estates." Receiver Termination Motion at page 8.

15.     On March 29, 2011, the Corporate Debtors' Trustee filed his *Application for Order of Abstention and Dismissal of the Starr Corporate Cases* in the bankruptcy cases of the Corporate Debtors (the "Abstention Motion"). The Abstention Motion is presently pending before this Court for abstention with respect to, and dismissal of, the Corporate Debtors' bankruptcy cases. The Corporate Debtors' Trustee has advised the Trustee that the Corporate Debtors' Trustee supports the instant motion for substantive consolidation and that, should this Court grant this Motion, the Abstention Motion will be withdrawn.

16.     The bar date for the filing of proofs of claims, other than governmental proofs of claim, in the Starr bankruptcy proceeding is November 14, 2011. No bar date has been

established in the bankruptcy cases of the Corporate Debtors.  As of the date of this Motion, three (3) claims totaling $2,923,749.30 have been filed against Starr, no claims have been filed against SIA, and eight (8) claims totaling $116,385.93 have been filed against S&C.

**Relief Requested**

17.    In order to preserve the value of any potential actions held by the estates of the Corporate Debtors and to maximize the recovery of all creditors of the Debtors, the Trustee respectfully seeks an order of this Court directing joint administration of the bankruptcy cases of the Debtors and the substantive consolidation of the Debtors.

18.    Specifically, the Trustee seeks entry of an order providing the following relief:

(a)  directing the joint administration of the Debtors' bankruptcy proceedings;

(b) directing the substantive consolidation of the Debtors' bankruptcy proceedings *nunc pro tunc* to the Corporate Debtors' Petition Date;

(c)  preserving all causes of action held by the estates of each of the individual Debtors notwithstanding the substantive consolidation of their estates, including, but not limited to, all causes of action arising under Chapter 5 of the Bankruptcy Code;

(d)  extinguishing all inter-Debtor claims, including, cross-Debtor claims, inter-Debtor guaranty claims, inter-Debtor indemnification claims and inter-Debtor contribution claims; and

(e)  directing that the administrative claims of the estates of the Corporate Debtors shall be treated as administrative claims of the consolidated estates, subordinate to the administrative claims of the Trustee and any professionals retained by the Trustee, but only to the extent allowed by this Court after notice and an opportunity for all parties to be heard.

## Argument in Support of Relief Requested

I.     Joint Administration

19.     By this Motion, the Trustee seeks entry of an order directing procedural consolidation and joint administration of these Debtors' cases for procedural purposes. Specifically, the Debtors request that the Court maintain one file and one docket for all of the jointly-administered cases under the caption of the Debtor Kenneth Ira Starr's case and that the cases be administered under the following proposed consolidated caption:

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

– – – – – – – – – – – – – – – – – – – – – – – – – – x

| | |
|---|---|
| **In re** | **: Chapter 7** |
| | : |
| **KENNETH IRA STARR** *et al.* | **: Case No. 11-10219 (ALG)** |
| | : |
| **Debtors.**[1] | **: Jointly Administered** |
| | **: Substantively Consolidated** |

– – – – – – – – – – – – – – – – – – – – – – – – – – x

1. The Debtors in these cases, the case number assigned to each of the Debtors and the last four digits of the tax identification number of each of the Debtors are: Kenneth Ira Starr (11-10219 (ALG)) (****); Starr Investment Advisors, LLC, (11-10639 (ALG)) (1147); and Starr & Co., LLC (11-10637 (ALG)) (6205).

20.     The Trustee also requests that a docket entry, substantially similar to the following, be entered on the docket of each of the Debtors other than Starr to reflect the joint administration of the Debtors' cases:

> An order has been entered in accordance with Rule 1015(b) of the Federal Rules of Bankruptcy Procedure directing the procedural consolidation and joint administration of the chapter 11 cases of Kenneth Ira Starr (11-10219 (ALG)); Starr Investment Advisors, LLC, (11-10639 (ALG)); and Starr & Co., LLC (11-10637 (ALG)). All further pleadings and other papers shall be filed in, and all further docket entries shall be made in, Case No. 11-10219 (ALG).

21.     The Trustee further requests that the Court order that the foregoing caption shall satisfy the requirements of section 342(c)(1) of the Bankruptcy Code.

22.     Bankruptcy Rule 1015(b) provides, in relevant part, that "(i)f … two or more petitions are pending in the same court by or against … a debtor and an affiliate, the court may order a joint administration of the estates."  Section 105(a) of the Bankruptcy Code provides this Court with the authority to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code.  *See* 11 U.S.C. § 105(a).  In light of the Trustee's request that the estates of the Debtors be substantively consolidated, an order directing the joint administration of the Debtors' bankruptcy proceeding is appropriate.  Accordingly, this Court is authorized to grant the relief requested by this Motion.

II.     Substantive Consolidation

23.     The seminal case regarding substantive consolidation within the Second Circuit is *Union Savings Bank v. Augie/Restivo Baking Company, Ltd. (In re Augi/Restivo Baking Company, Ltd.)*, 860 F.2d 515 (2d Cir. 1988).

24.     The *Augie/Restivo* court stated that "[s]ubstantive consolidation has no express statutory basis but is a product of judicial gloss."  *Id.*  The Court also noted that courts have recognized the authority to consolidate substantively debtors' estates under the general equitable powers set forth in section 105 of the Bankruptcy Code.  *Id.* at n.1.[2]

25.     In *Augie/Restivo*, the Second Circuit described substantive consolidation as usually resulting in "*inter alia*, pooling the assets of, and claims against, the two entities;

---

[2] However, at least one court within the Southern District of New York has recognized a statutory basis for substantive consolidation in chapter 11 cases at section 1123(a)(5)(C) of the Bankruptcy Code, which requires a plan to "provide adequate means for the plan's implementation" including "merger or consolidation of the debtor with one or more persons."  *See In re Wordlcom, Inc.*, Case No 02-13533, 2003 Bankr. LEXIS 1401 at *103 (Bankr. S.D.N.Y. Oct. 31, 2003) (citing *In re Stone & Webster, Inc.*, 286 B.R. 532, 540-41 (Bankr. D. Del. 2002)).

satisfying liabilities from the resultant common fund; eliminating inter-company claims; and combining the creditors of the two companies for purposes of voting on reorganization plans." 860 F.2d at 518.

26.     The *Augie/Restivo* court admonished against the cavalier use of substantive consolidation, stating that "substantive consolidation 'is no mere instrument of procedural convenience ... but a measure vitally affecting substantive rights.'" 860 F.2d. at 518 (quoting *Flora Mir Candy Corp. v. R.S. Dickson & Co.*, 432 F.2d 1060, 1062 (2d Cir. 1970)). As a result, substantive consolidation should "'be used sparingly.'" *Id.* (quoting *Chemical Bank New York Trust Co. v. Kheel*, 369 F.2d 845, 847 (2d Cir. 1966)). In a recent application of the *Augie/Restivo* standard, this Court noted that "substantive consolidation is a flexible concept and ... a principal question is whether creditors are adversely affected by consolidation and, if so, whether the adverse effects can be eliminated." *In re Jennifer Convertibles, Inc.*, 447 B.R. 713, 723-24 (Bankr. S.D.N.Y. 2011).

27.     According to the *Augie/Restivo* court, "[t]he sole purpose of substantive consolidation is to ensure the equitable treatment of all creditors." 860 F.2d at 518. Although the *Augie/Restivo* court recognized that other courts had identified numerous factors relevant to determining whether substantive consolidation was appropriate, the Second Circuit distilled these considerations down to two critical factors:

> (i)  whether creditors dealt with the entities as a single economic unit and did not rely on their separate identity to extend credit; or
>
> (ii)  whether the affairs of the debtors are so entangled that consolidation will benefit all creditors.

*Id.* (citations and quotations omitted).

28.     These factors are considered in the disjunctive and the satisfaction of one is sufficient to justify substantive consolidation.  *See Off'l Comm. of Unsecured Creditors of Verstar, Inc. v. Amer. Tower Corp. (In re Verestar, Inc.)*, 343 B.R. 444, 463 (Bankr. S.D.N.Y. 2006) ("The Second Circuit set forth these tests in the disjunctive and the presence of either may justify an order of substantive consolidation.") (citing, *inter alia*, *FDIC v. Colonial Realty Co.*, 966 F.2d 57, 61 (2d Cir. 1992)).  Moreover, the inability to satisfy one factor does not preclude satisfaction of the other.  *See, e.g., In re 599 Consumer Electronics, Inc.*, 195 B.R. 244, 250 (D. S.D.N.Y.1996) (despite inability to satisfy expectations of creditors test, might still be able to satisfy entanglement test).

29.     Courts routinely grant motions of trustees to consolidate substantively the estates of debtors with non-debtors and have recognized the standing of creditors and committees to seek substantive consolidation.  *See, e.g., Bracaglia v. Manzo (In re United Stairs Corp.)*, 176 B.R. 359, 367-68 (Bankr. D. N.J. 1995); *Alexander v. Compton (In re Bonham)*, 229 F.3d 750 (9th Cir. 2000) (granting chapter 7 trustee's motion to consolidate substantively debtor and non-debtor entities); *Simantob v. Lahijani (In re Lahijani)*, Case No. SV 98-15561, 2005 Bankr. LEXIS 1891 at *18 (Bankr. C.D. Cal. Oct. 3, 2005) ("While no Ninth Circuit Court of Appeals case holds that creditor has standing to move for substantive consolidation, numerous district and bankruptcy courts have held it is proper for creditors to bring this type of motion.") (citations omitted).

A.     The Affairs of the Debtors are Hopelessly Commingled and the Costs of Disentangling the Debtors' Affairs Vastly Exceeds the Benefit of Doing So

30.     The second *Augie/Restivo* factor considers whether "there has been a commingling of the … firms' assets and business function."  860 F.2d at 519.  However, "substantive consolidation should be used only after it has been determined that all creditors will

benefit because untangling is either impossible or so costly as to consume the assets." *Id.* This factor applies in those situations where "the time and expense necessary even to attempt to unscramble [the assets and liabilities is] so substantial as to threaten the realization of any net assets for all the creditors or where no accurate identification and allocation of assets is possible." *Id.* (citations and quotations omitted).

31.    Applying this *Augie/Restivo* factor, the Bankruptcy Court in *Worldcom* stated that "to prevail on substantive consolidation, the [proponents] are not required to prove that an allocation of assets and liabilities to the various legal entities cannot be achieved under any circumstances.  Rather it is sufficient to demonstrate that it would be so costly and difficult to untangle the Debtors' financial affairs, such that doing so is a 'practical impossibility,' making substantive consolidation appropriate." *In re Worldcom, Inc.*, 2003 Bankr. LEXIS at * 107-08 (citations omitted).

32.    The *Worldcom* court granted substantive consolidation, relying primarily on the entanglement factor, finding that "the Debtors' operational affairs and financial affairs are so entangled that the accurate identification of assets and liabilities could never be accomplished or, even if it could be accomplished, would take so long and be so costly such that creditors as a whole would be substantially harmed by the effort." *Id.* at *109.  The facts relied upon by the *Worldcom* court in reaching its conclusion included:  (i) common management and control of the debtors; (ii) a unified telecommunications network that served substantially all of the debtors, centralized administrative functions, such as cash management, purchasing, human resources, and financing, and presentation of products and services to the marketplace on an integrated basis; (iii) public financial reporting on a consolidated basis; (iv) financial entanglement resulting form internal financial management being conducted on a business line and functional

basis rather than legal entity basis; (v) inability to account accurately and reliably for intercompany claims, resulting from, among other things, lack of proper internal controls; (vi) debtors' inability to create accurate and reliable historical financial statements on a separate legal entity basis; and (vii) acute lack of institutional knowledge and documentation making reconstruction of historical financial information on a separate legal entity basis exceedingly difficult and perhaps impossible. *Id.* at * 109-111.

33.    The instant bankruptcy cases have their genesis in Mr. Starr's use of the Corporate Debtors and the assets of their clients for his personal use and to cover up his misappropriation of one client's funds with those of another (i.e. to conduct a Ponzi scheme). *See* Criminal Complaint, *passim*.  *See also* Interim Receiver's Report at ¶ 21("[I]t is already apparent to me that numerous entities formed by Kenneth Starr hold investment interests or properties that Kenneth Starr obtained in exchange for inducing clients of the [Corporate Debtors] to make certain investments, or by using funds diverted from accounts of the [Corporate Debtors] or clients of the [Corporate Debtors].").  From the Criminal Complaint and Indictment, it appears as though Starr used the funds of one of the Corporate Debtors' clients to satisfy the withdrawals or demands of other clients of the Corporate Debtors on several occasions. *See* Criminal Complaint at ¶ 15; Indictment at ¶ 7(a), (b) and (e).  It also appears as though Starr used client funds to make transfers to himself and his family and to bankroll his luxurious lifestyle.   *See* Criminal Complaint at ¶ 16-18; Indictment at ¶ 7(c) and (d). Furthermore, it appears as though Starr attempted to conceal his activities through the use of various accounts and entities he controlled, particularly two attorney trust accounts affiliated with a specific attorney and an account held in the name of Marose, LLC, an entity affiliated with Starr and controlled in whole or in part by Starr and that client funds were commingled

among these accounts.  *See* Indictment at ¶¶ 5-6.  *See also* Interim Receiver Report at ¶ 22

(discussing use of attorney's accounts to make undertake fraudulent transactions).

34.     On September 10, 2010, Starr pled guilty to Count 9 of the Indictment.  *See*

Criminal Proceeding, Minute Entry, Sept. 10, 2010.  Count 9 of the Indictment relates to

defrauding "Victim # 3" of $1 million.  According to the Criminal Complaint and the Indictment,

on or about April 26, 2010 Starr, through one of the Corporate Debtors, used $1 million

belonging to Victim # 3 to satisfy the demand of Victim # 2 for the return of $1 million of her

funds misappropriated by Starr.  *See* Criminal Complaint at ¶¶ 14-15; Indictment at 7(e).  Upon

information and belief, similar transfers are likely to have occurred among the clients of the

Corporate Debtors and Starr's victims.

35.     In light of the extent and complexity of Starr's apparent fraud, his use of various

accounts to conceal and conduct his fraudulent conduct, his misappropriation and commingling

of client funds without regard to actual ownership of those funds, the entanglement between

Starr's personal affairs and funds belonging to clients of the Corporate Debtors, it is clear that

the affairs of Starr and the Corporate Debtors are hopelessly entangled.  The Interim Receiver

Report itself details the extent to which the Receiver was required to seek out documentary and

other evidence in order to endeavor to develop a clear picture of Starr's conduct and to determine

the nature and existence of potential claims held by the Corporate Debtors.

36.     As evidenced by the Receiver Termination Motion and the Abstention Motion,

there are inadequate liquid assets available to the Corporate Debtors to investigate completely or

prosecute those causes of action.  *See* Receiver Termination Motion at pp. 11-15; Abstention

Motion ¶¶ 10-15.  It appears that there may be assets available for liquidation within one or more

of the Debtors' estates but that there is uncertainty as to which of the Debtors' estates those

assets belong.  *See* Interim Receiver Report at ¶ 14; Receiver Termination Motion at p. 9. However, upon the Trustee's investigation, it appears as though there are assets available to the estate of Starr that could be liquidated and distributed to creditors of Starr's estate or used to fund the prosecution of claims held by the estates of the Corporate Debtors.

37.    Moreover, because Starr is currently in prison and not readily available to assist in disentangling the affairs of the Debtors (and Debtors' counsel has advised the Trustee that Starr did not maintain and/or keep many records that would facilitate any attempts to determine what assets are those of Starr and what assets, if any, are those of the Corporate Debtors) and all of the employees of the Corporate Debtors were dismissed over a year ago,[3] the costs of attempting to do so will be significantly higher than those costs might otherwise be in a more conventional chapter 7 proceeding — and indeed, attempting to disentangle the affairs of Starr and the Corporate Debtors may prove to be futile.

38.    Under these circumstances, substantive consolidation of the Debtors is clearly appropriate.  The facts clearly show (a) common management and ownership among the Corporate Debtors and Starr; (b) financial entanglement resulting between Starr and the Corporate Debtors from Starr's use of the assets of the clients of the Corporate Debtors both to perpetrate his fraud and to fund his personal lifestyle; (c) an inability to account accurately for claims among Starr, the Corporate Debtors, the clients of the Corporate Debtors and various other entities due to Starr's use of various accounts and corporate entities to perpetrate his fraud; (d) the inability of the Trustee, the Receiver or the Corporate Debtors' Trustee to create accurate and reliable historical financial statements regarding Starr and the Corporate Debtors due to Starr's mismanagement of the affairs of all three Debtors, the commingling of assets among the

---

[3] *See* Receiver Termination Motion at p. 5. ("Accordingly, from and after June 11, 2010, the [Corporate Debtors] no longer had any employees.").

Debtors, the clients of the Corporate Debtors and various other entities and the failure of Starr and the Corporate Debtors to maintain accurate, reliable or credible financial statements; and (e) a lack of institutional knowledge regarding Starr's conduct and that of the Corporate Debtors due to Starr's imprisonment and the dismissal of the employees of the Corporate Debtors.

B.      The Debtors' Estates Should Be Substantively Consolidated *Nunc Pro Tunc* to the Corporate Debtors' Petition Date

39.      The Trustee also requests that this Court direct that the substantive consolidation of the Debtors be effective *nunc pro tunc* to the Corporate Debtors' Petition Date.

40.      Bankruptcy Courts have generally held that substantive consolidation of a debtor's estate with the assets and liabilities of non-debtors *nunc pro tunc* to the petition date of the debtor, rather than as of the date the substantive consolidation order is entered, is appropriate. *See, e.g., Kroh Bros. Dev. Co v. Kroh Bros. Mgt. Co.*, 117 B.R. 499, 502 (Bankr. W.D. Mo. 1989) ("[T]his inquiry begins with the proponent of *nunc pro tunc* making a showing that *nunc pro tunc* is necessary to achieve some benefit or avoid some harm.  Following this showing, a potential preference holder may challenge the *nunc pro tunc* entry of the consolidation order by establishing that it relied on the separate credit of the entities to be consolidated and that it will be harmed by the shift in filing dates.  If a potential preference holder meets this burden, the court must then determine whether the benefits of *nunc pro tunc* outweigh its detriments.") (quotations omitted); *In re Bonham*, 229 F.3d at 770-71 ("we leave it to the discretion of the bankruptcy court to determine in light of the equitable nature of substantive consolidation whether *nunc pro tunc* consolidation should be ordered"); *In re Lahijani*, 2005 Bankr. LEXIS at *42-45 (granting *nunc pro tunc* substantive consolidation where there was sufficient evidence that non-debtors were treated as one with the debtor and assets were commingled).

41.    In a case involving substantively consolidated debtors with different petition dates, the Sixth Circuit held that the substantive consolidation of the debtors' estates should be *nunc pro tunc* to the petition date of the earliest filing entity.  *See First Nat'l Bank v. Rafoth (In re Baker & Getty Fin'l Servs.)*, 974 F.2d 712, 720 (6th Cir. 1992) ("'where two cases are substantively consolidated . . . the preference provisions require us to treat the creditors of both debtors in substantially the same manner. In order for us to do so, we must assign a like filing date to both Debtors for purposes of the preference provisions'") (quoting and applying *Evans Temple Church of God in Christ & Cmty. Ctr, Inc. v. The Carnegie Body Co. (In re Evans Temple Church of God in Christ & Cmty. Ctr., Inc.)*, 55 B.R. 976, 981-82 (Bankr. N.D. Ohio 1986)).

42.    In these cases, the earliest filing date is that of Starr's involuntary chapter 7 proceeding.    However, Starr's bankruptcy proceeding was commenced by the filing of an involuntary petition and the order for relief was not entered until almost six months after the filing of the Starr involuntary petition.  The voluntary petitions regarding the Corporate Debtors were filed approximately three weeks after the Starr involuntary petition was filed.

43.    In order to allow for the orderly administration of the Debtors' estates and the equitable application of both the statute of limitations imposed under section 546(a)(1)(A) of the Bankruptcy Code and the various look back periods under potential Chapter 5 causes of action, the Trustee respectfully requests that this Court direct the substantive consolidation of the Debtors *nunc pro tunc* to the Corporate Debtors' Petition Date.  *See* 11 U.S.C. §§ 546(a)(1)(A), 547(b)(4), 548(a)(1) and 553(b) (statute of limitations and look back periods for certain avoidance actions commence on the petition date).[4]

---

[4] The Trustee notes that the statute of limitations imposed under section 546(a)(1)(A) commences from entry of the order for relief, which in the case of the Corporate Debtors occurred on the date their

C.    Chapter 5 Causes of Action Should Be Expressly Preserved

44.    Some courts have recognized, without providing significant explanation, that, as a general rule, "[a]bsent express preservation of the trustee's avoidance power, an order of substantive consolidation would ordinarily eliminate that power." *In re Bonham*, 229 F.3d at 769 (citing *Gill v. Sierra Pac. Constr., Inc. (In re Parkway Calabasas Ltd.)*, 89 B.R. 832 (Bankr. C.D. Cal. 1988) *aff'd* 949 F.2d 1058 (9th Cir. 1991)). *See also First Nat'l Bank of El Dorado v. Giller (In re Giller)*, 962 F.2d 796, 799 (8th Cir. 1992) ("We recognize that substantive consolidation normally would eliminate the justification for the exercise of the trustee's avoidance power. Nonetheless, the bankruptcy court retains the power to order less than complete consolidation.") (citing *In re Parkway Calabasas Ltd.*, 89 B.R. at 837).

45.    The Trustee submits that these broad statements are incorrect, and respectfully submits that these blanket statements overstate the holding of the Bankruptcy Court in *In re Parkway Calabasas Ltd., supra,* which simply held that when the estates of both the transferor and transferee of a fraudulent conveyance are substantively consolidated, any fraudulent conveyance claims are extinguished, as the injured and benefitted creditor body are merged. 89 B.R. at 839 (comparing substantive consolidation to a merger and concluding that "[s]ubstantive consolidation accomplishes the merger of the two estates, leaving no party unjustly enriched and no creditors looking to an impoverished asset pool for payment"). *See also In re 599 Consumer Elecs.,* 195 B.R. at 246 ("the consolidation of the estates of the companies that received the

---

voluntary petitions were filed pursuant to section 301(b) of the Bankruptcy Code, but did not occur in the involuntarily-commenced Starr bankruptcy case until this Court entered an order for relief therein pursuant to section 303(h) of the Bankruptcy Code. As a result, in order to satisfy section 546(a)(1)(A), the Trustee requests that the Debtor's estates be substantively consolidated as of the date on which the earliest order for relief was entered, i.e. the Corporate Debtors' Petition Date. Substantive consolidation *nunc pro tunc* to the Corporate Debtors' Petition Date is also appropriate, as most of the claims and causes of action the Trustee may seek to pursue ostensibly belong to the estate of one or both of the Corporate Debtors.

disputed payments with the estates of the companies that made them generally defeats fraudulent conveyance claims, because 'the merger of the two estates [leaves] no party unjustly enriched and no creditors looking to an impoverished asset pool for payment'") (quoting *In re Parkway Calabasas Ltd.*, 89 B.R. at 839); *Moran v. Hong Kong & Shanghai Banking Corp. (In re Deltacorp, Inc.)*, 179 B.R. 773, 779 (Bankr. S.D.N.Y. 1995) ("The issue is whether the consolidated debtors are entitled to recover a constructively fraudulent transfer when one of them received fair consideration for that transfer so that the consolidated estate is augmented and diminished in equal amounts by the consideration received and the subsequent transfer in payment of the debt thereby incurred. To state the issue clearly is almost to resolve it, because it makes little sense to permit the consolidated estate to recover a transfer not made with actual fraudulent intent when the estate has not been harmed. The effect on the creditors is identical whether repayment was made by the recipient of the consideration or some other consolidated debtor.").

46.    However, for the avoidance of doubt, the Trustee respectfully requests that any order granting the relief requested herein expressly preserve all Chapter 5 causes of action, notwithstanding the substantive consolidation of the Debtors' estates.  *See In re Bonham*, 229 F.3d at 769 ("[T]he bankruptcy court has the power, in appropriate circumstances, to order less than complete substantive consolidation, or to place conditions on the substantive consolidation, including the preservation of avoidance claims by the formerly separate estates.") (quotations omitted).

D.      Inter-Debtor Claims Should Be Extinguished

47.     As the *Augie/Restivo* court recognized, one of the general effects of substantive

consolidation is the elimination of inter-company claims.  860 F.2d at 518.  The Trustee requests

that any order granting the relief requested herein expressly provide that all such claims,

including inter-Debtor claims related to guaranties, indemnification obligations or contribution

obligations among the Debtors, are extinguished, except as necessary to prosecute any preserved

Chapter 5 cause of action, to avoid any doubt that the Trustee is under no obligation to pursue

any such claims.

E.      Post-Petition Administrative Claims of the Estates of SIA and S&C and the
        Receiver Should Be Granted Subordinate Priority Status and Waiver of
        Corporate Debtors' Trustee's Commissions

48.     The Receiver has incurred expenses in the administration of the Receivership

Proceeding, some of which may have been incurred following the Corporate Debtors' Petition

Date.  *See* Receiver Termination Motion at p. 14.    Furthermore, upon information and belief,

the Corporate Debtors' Trustee may have incurred expenses entitled to priority under sections

330(a), 503(b)(2), 507(a)(2) and 726(a)(1) of the Bankruptcy Code in the bankruptcy cases of the

Corporate Debtors.

49.     In order to ensure that the Receiver and the Corporate Debtors' Trustee are not

harmed by the substantive consolidation of the Debtors' estates, the Trustee respectfully requests

that this Court direct that, to the extent allowed by this Court and subject to review and objection

by all parties-in-interest to the substantively consolidated estates of the Debtors, the claims of the

Receiver and the Corporate Debtors' Trustee arising after the Corporate Debtors' Petition Date

be treated as administrative claims against the Debtors' substantively consolidated estates,

subordinate only to the administrative claims of the Trustee and of his professionals.  *Cf.* 11

U.S.C. §§ 502(f) and 507(a)(3) (granting administrative priority to claims arising between the commencement of the case and the earlier of order for relief or appointment of a trustee).[5]

50.     In addition, the Corporate Debtors' Trustee has agreed that, provided the relief granted is substantially similar to the relief requested herein, he shall not be entitled to receive, and shall be deemed to have waived, any commissions payable to him pursuant to section 326 of the Bankruptcy Code.

> F.     Analogous Authority for the Relief Requested Herein is Found in the Ninth Circuit's Decision in *Bonham*

51.     Although not binding on this Court, the Ninth Circuit's decision in *In re Bonham* is similar to the situation regarding the instant Debtors in many ways and supports the relief requested herein.   *Bonham* involved an individual debtor who had perpetrated a $53 million Ponzi scheme through two non-debtor corporate entities.   229 F.3d at 759.   Investors in the corporate entities filed an involuntary petition against the individual debtor.   *Id.*   Because the trustee did not expect to realize significant proceeds from the liquidation of the individual debtor's assets, the trustee filed adversary proceedings against the investors of the individual and the corporate non-debtors to avoid fraudulent transfers.   *Id.*   The investor defendants challenged the trustee's standing to avoid transfers made by non-debtors.   *Id.*   In response, the trustee filed a motion seeking substantive consolidation of the debtor's estate with the non-debtor's assets and liabilities, *nunc pro tunc* to the debtor's petition date.   *Id.* at 760.   The bankruptcy court granted the trustee's *nunc pro tunc* substantive consolidation motion "to assure that the overcompensated initial investors would share in the losses suffered by subsequent investors."   *Id.*

---

[5] At least some portion of the expenses of the Receiver and the Corporate Debtors Trustee arose between the Starr Petition Date and the appointment of the Trustee and, arguably, constitute claims subject to section 502(f) of the Bankruptcy Code.

52.    The Ninth Circuit recognized that "Courts have permitted the consolidation of non-debtor and debtor entities in furtherance of the equitable goals of substantive consolidation" and that "bankruptcy courts have sanctioned the substantive consolidation of two or more entities *nunc pro tunc* in order to allow a trustee or creditors to attack fraudulent transfers or avoidable preferences made by the debtor or consolidated entities as of the date of filing of the initial bankruptcy petition." *Id.* at 765 (citations omitted).

53.    The Ninth Circuit adopted the *Augie/Restivo* test for determining whether to grant substantive consolidation. *Id.* 766 ("The Second Circuit's approach is more grounded in substantive consolidation and economic theory; it is also more easily applied."). The Ninth Circuit found that the record clearly showed that the debtor had commingled her personal assets with those of the corporate non-debtors and there was no clear demarcation between the affairs of the individual and the corporate debtors. *Id.* at 767. The *Bonham* court went to find that "[i]n light of the multiplicity of investors and claims and the lack of cooperation on the part of [the individual debtor], the bankruptcy court did not clearly err in determining that the exercise of disentangling the affairs of [the individual debtor and corporate non-debtors] would be needlessly expensive and possibly futile." *Id.* The Ninth Circuit also rejected the argument that the harm to the investors outweighed the benefits from substantive consolidation, finding that the "risk [that investors] may lose a legal defense to what would otherwise be viable claims of fraudulent transfer" was easily outweighed by the prospect that "money will be recovered, the estates will be equitably administered and the assets equitably distributed." *Id.* at 767. Absent substantive consolidation, the Ninth Circuit found that "claimants who have received no payments from [the corporate debtors] will recover no funds invested in … those entities." *Id.* at

768.    Thus, the Ninth Circuit concluded that "substantive consolidation [would] allow a truly equitable distribution of assets by treating the corporate shells as a single economic unit." *Id.*

54.    The *Bonham* investors argued that the bankruptcy court could not "order substantive consolidation for the sole purpose of preserving a trustee's avoidance power, where there are no assets to be pooled." *Id.* at 768.   The Ninth Circuit described the "primary motivation for ordering substantive consolidation" in the *Bonham* case as allowing "the trustee to pursue avoidance actions against 'Target' creditors who have recouped, in part or in full, their investments" with the individual debtor. *Id.*   The Ninth Circuit concluded that "[s]uch a motivation is not without precedent and is proper in light of the equitable nature of substantive consolidation." *Id.* (citing *In re Giller*, 962 F.2d at 799; *In re Koh Bros.*, 117 B.R. at 502). Concluding, by reference to the *Parkway Calabasas* decision, that substantive consolidation usually eliminates avoidance powers, the Ninth Circuit in *Bonham* concluded that "the bankruptcy court has the power, in appropriate circumstances, to order less than complete substantive consolidation, or to place conditions on substantive consolidation, including the preservation of avoidance claims by formerly separate estates." *Id.* at 769 (quotations omitted). Because the bankruptcy court in *Bonham* expressly reserved avoidance actions in the consolidation order, the Ninth Circuit found that the trustee had the authority to pursue those claims. *Id.*

55.    Finally, the investors argued that the bankruptcy court erred in granting the substantive consolidation order *nunc pro tunc* to the individual debtor's petition date.   The Ninth Circuit rejected the *AutoTrain* approach to determining whether *nunc pro tunc* substantive consolidation is appropriate, which requires an extensive balancing of the benefits and harms of *nunc pro tunc* consolidation, and cited with approval the conclusion of the Sixth Circuit in *Baker*

& *Getty, supra,* that a single filing date should be applied to consolidated entities. *Id.* at 770-71.

The Ninth Circuit found that the commingling of the debtor and the corporate non-debtors

justified *nunc pro tunc* application of the consolidation order. *Id.* at 771.

56.    With the exception of the facts that the Corporate Debtors are also the subject of

bankruptcy proceedings and that Starr's bankruptcy estate potentially possesses the assets

necessary to fund "Target" claims against parties that withdrew funds from the Ponzi scheme,

the facts underlying *Bonham* are strikingly similar to those in the instant Debtor cases.  Thus,

*Bonham,* in applying the *Augie/Restivo* standard, provides solid support for the substantive

consolidation of the Debtors' estates to allow for the prosecution of claims against those who

recovered more than they should have from Starr's Ponzi scheme before its collapse.

## Notice

57.    Notice of this Motion shall be provided (i) with all exhibits to this Court, the

United States Trustee's Office, the Receiver and the Corporate Debtors' Trustee; and (ii) due to

the voluminous nature of the exhibits, without exhibits to all parties appearing on the creditor

matrices of each of the Debtors.  Parties seeking copies of the exhibits may contact Nicholas J.

Brannick, Squire Sanders & Dempsey (US) LLP, 41 South High Street, Suite 2000, Columbus,

OH 43215, Phone: 1.614.365.2707, E-mail: nicholas.brannick@ssd.com.

## No Previous Request

58.    No prior request for the relief requested by this Motion has been made by the

Trustee in this matter.

## Conclusion

59.    The substantive consolidation of the Debtors is necessary not only because of the

commingling of the affairs of the Debtors, but also to allow for the prosecution of potential

claims belonging to the Corporate Debtors that, but for the availability of proceeds from assets of Starr's estate and assets regarding which ownership is uncertain, could not otherwise be prosecuted, greatly diminishing the estates of the Corporate Debtors and harming creditors of those estates.  The relief requested herein will further the Trustee's effort to maximize the recoveries of all of the creditors of the Debtors' estates.

WHEREFORE the Trustee respectfully requests that this Court enter an order in substantially the form attached hereto as <u>Exhibit 4</u>: (i) directing joint administration of the Debtors' estates; (ii) directing the substantive consolidation of the Debtors' estates, *nunc pro tunc*, to February 17, 2011; (iii) expressly preserving all avoidance actions arising under Chapter 5 of the Bankruptcy Code; (iv) extinguishing all inter-Debtor claims; (v) providing administrative claimants of the Receivership Proceeding and the Corporate Debtors with subordinate priority claims against the consolidated Debtors' estates; and (vi) granting such other relief as this Court deems necessary and appropriate.

Dated: September 16, 2011            SQUIRE, SANDERS & DEMPSEY (US) LLP

By: */s/ Robert A. Wolf*
Robert A. Wolf (robert.wolf@ssd.com)
Andrea K. Fisher (andrea.fisher@ssd.com)
30 Rockefeller Plaza, 23rd Floor
New York, New York 10112
(212)872-9800

*Special Litigation Counsel to Robert L. Geltzer, as Chapter 7 Trustee*